NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TOLL BROTHERS, INC., et al., :<br>    Petitioners, :<br>  v. :<br>TRACY FIELDS, :<br>    Respondent. : | Civil Action No. 10-04606 (JAP)<br><br>**OPINION** |

PISANO, District Judge.

This action is brought by petitioners Toll Brothers, Inc. ("Toll Brothers") and Toll NJ, LP ("Toll NJ" and, together with Toll Brothers, "Petitioners") against respondent Tracy Fields ("Respondent"). Presently before the Court is a motion by Petitioners to vacate an arbitration award entered on June 5, 2010 (the "Arbitration Award"). Respondent opposes the motion. Oral argument was held on January 6, 2011. For the reasons set forth herein, the Court denies Petitioners' motion to vacate.

**I.   Factual Background**

Respondent and Toll NJ entered into an Agreement of Sale for the purchase, construction and sale of a Hampton Traditional style home located in Farmingdale, New Jersey on February 24, 2006 (the "Purchase Agreement"). (Jeffrey K. Newman Certification ("Newman Cert."), Exhibit A). In connection with her execution of the Purchase Agreement, Respondent provided cash deposits to Toll NJ totaling $62,630.00 and executed a Note in favor of Toll NJ in the

1

amount of $52,397.00.  (Richard A. Bokma Certification ("Bokma Cert."), Exhibit 16; Newman Cert., Exhibit A).

The Purchase Agreement contains several provisions that are relevant to the underlying dispute.  Section 3 of the Purchase Agreement, the Mortgage Application provision, outlines the rights and obligations of the parties with respect to Respondent's mortgage application in connection with the purchase of the home.  (Newman Cert., Exhibit A, Section 3).  However, the Purchase Agreement also includes the following endorsement, which expressly replaces the Mortgage Application clause of the Purchase Agreement in its entirety:

> Buyer acknowledges that this Agreement is not contingent upon the Buyer obtaining financing for the purchase of the subject premises, and that Buyer shall seek financing through Buyer's own sources.  Buyer agrees and understands that failure to secure financing for the purchase of the subject premises shall in no way release Buyer from Buyer's obligations under this Agreement (the "Cash Sale Endorsement").  (Newman Cert., Exhibit A).

Finally, the Purchase Agreement contains a Default provision, which gives Toll NJ the right to retain all cash deposits upon an uncured default by Respondent.  (Newman Cert., Exhibit A, Section 5).

The initial transaction closing date was set for December 20, 2006.  (Newman Cert., Exhibit C).  For various reasons, the parties rescheduled the closing date to January 2, 2007 and, again, to January 4, 2007.  (Newman Cert., Exhibits D and E).  However, Respondent was unable to secure financing to complete the transaction and, on January 5, 2007, Toll Brothers notified Respondent that she was in default under the Purchase Agreement.  (Newman Cert., Exhibit F).  After continued communication between the parties, Respondent and Toll NJ reconfirmed the terms of the Purchase Agreement on March 30, 2007.  (Newman Cert., Exhibit B).  Pursuant to the terms of such reconfirmation, Respondent provided an additional, non-refundable cash deposit of $10,000.00 to Toll NJ, with a new closing date scheduled for April

11, 2007. (Newman Cert., Exhibit B; Bokma Cert., Exhibit 16). Respondent was, again, unable to secure financing for the purchase of the home by the scheduled closing date. (Bokma Cert., Exhibit 15). As a result, the parties failed to close the transaction.

Respondent filed for arbitration against Toll Brothers, arguing that the cash deposits made in connection with the Purchase Agreement should be returned to her. (Newman Cert., Exhibit G). Arbitration proceedings were held before arbitrator Richard H. Steen, Esq. ("Arbitrator Steen") on May 10, 2010, and the Arbitration Award was entered in Respondent's favor in the amount of $62,630.00 on June 5, 2010. (Newman Cert., Exhibit H).

Petitioners filed this action on September 7, 2010, asking the Court to vacate the Arbitration Award. Petitioners argue that the Arbitration Award directly contradicts the express language of the Purchase Agreement, which entitles Toll NJ to retain cash deposits upon Respondent's default. Petitioners also argue that the Arbitration Award should be vacated because the award is entered against Toll Brothers, the parent company of Toll NJ and a non-party to the Purchase Agreement.

## II.     Legal Standard

The Federal Arbitration Act (the "FAA") creates a strong presumption in favor of enforcing arbitration awards. *New Jersey Carpenters Funds v. Professional Furniture Services*, 2009 WL 483849 at *2 (D.N.J. February 25, 2009) (citing *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir. 2005)). Pursuant to the FAA, a district court may vacate an arbitration award only under a limited set of circumstances including: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause

3

shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(1)-(4).

The general rule is that, "[a]s long as the arbitrator's award 'draws its essence from the… agreement," and is not merely 'his own brand of industrial justice,' the award is legitimate." *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).  Thus, if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'"  *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17*, 531 U.S. 57, 62, 121 S.Ct. 462, 466, 148 L.Ed.2d 354 (2000) (citing *United Paperworks*, 484 U.S. at 38).  "Neither a court's disagreement with the arbitrator's construction of a contract nor its belief that its interpretation of a contract is better justifies a court overruling the arbitrator."  *Exxon Corp. v. Local Union 877, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 980 F.Supp. 752, 760 (D.N.J. 1997) (citing *News America Publications, Inc. Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)).  However, a district court may vacate an arbitration award where the arbitrator's decision was wholly unsupported by the agreement's plain language or where the arbitrator failed to adhere to principles of contract construction.  *News America Publications, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103*, 921 F.2d 40, 41 (3d Cir. 1990); *New Jersey Carpenters*, 2009 WL 483849 at *2.

The Third Circuit has previously recognized that arbitration awards may also be vacated where the arbitrator has demonstrated a "manifest disregard for the law." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (quoting *Local 863 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Jersey Coast Egg Producers, Inc.*, 773 F.2d 530, 534 (3d Cir. 1985)). The Third Circuit has not addressed whether manifest disregard of the law remains a valid ground for vacating an arbitration award under the FAA in the wake of the Supreme Court's decision in *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). *See Paul Green School Of Rock Music Franchising, LLC. v. Smith*, 389 Fed.Appx. 172, 176-177 (3d Cir. 2010) (discussing *Hall Street* and declining to determine whether manifest disregard of the law remains a valid ground for vacatur). Before *Hall Street*, the Third Circuit held that an arbitration award could only be set aside on this basis where the moving party shows that the "arbitrator's decision evidences manifest disregard for the law rather than an erroneous interpretation of the law." *Local 863*, 773 F.2d at 533 (citing *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953) (overruled on other grounds)). Manifest disregard for the law means more than mere legal error or misunderstanding. *See Tanoma Mining. Co., Inc. v. Local Union No. 1269*, 896 F.2d 745, 749 (3d Cir. 1990) (stating that an arbitration award may not be vacated merely because the arbitrator made an error of law). The Third Circuit has recently indicated that a party seeking to vacate an arbitrator's decision on the ground of manifest disregard of the law "must demonstrate that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green*, 389 Fed.Appx. at 177 (citing *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008) (overruled on other grounds)). This Court need not

decide whether this basis remains a valid ground for vacatur because, even if it did apply, the facts of this case do not rise to the standard for manifest disregard of the law previously set by the Third Circuit.

### III.     Legal Analysis

Petitioners first argue that the Arbitration Award should be vacated because the Cash Sale Endorsement clearly and unambiguously states that the Purchase Agreement was not contingent upon Respondent obtaining financing and the Arbitration Award is not in keeping with those express terms.  Petitioners correctly point to New Jersey case law holding that courts are bound to enforce contracts as written and that they have no authority to create a different or better contract for the parties than they executed.  *County of Morris v. Fauver*, 153 N.J. 80, 103, 707 A.2d 958 (1998) (citing *Koshliek v. Board of Chosen Freeholders of Passaic County*, 144 N.J. Super. 336, 344, 365 A.2d 492 (Law Div. 1976)).  "When the terms of [a] . . . contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties."  *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 43, 161 A.2d 717 (1960) (citations omitted).  Petitioners also correctly note that the failure "to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading."  *Young v. Prudential Ins. Co. of Am.*, 297 N.J. Super. 605, 619, 688 A.2d 1069 (App. Div. 1997).

Upon reviewing the terms of the Purchase Agreement, hearing testimony during the arbitration proceedings and reviewing extensive documentation, Arbitrator Steen was apparently convinced that the circumstances surrounding the execution of the Cash Sale Endorsement by Respondent resulted in the creation of an unconscionable contract.  The Arbitration Award states that the Cash Sale Endorsement was "not sufficiently clear and understandable" and that Petitioners "knew or should have known that [Respondent] required financing to acquire the

home."  Under New Jersey law, a contract is unconscionable if its terms are manifestly unfair or oppressive and are dictated by a dominant party.  *Howard v. Diolosa*, 241 N.J.Super. 222, 230, 574 A.2d 995(App.Div. 1990)  (citing *Kuzmiak v. Brookchester,* 33 N.J.Super. 575, 584-585, 111 A.2d 425 (App.Div. 1955)).  A party demonstrates unconscionability by "showing some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms."  *Howard*, 241 N.J.Super. at 230 (citing *Rotwein v. General Accident Group & Cas. Co.,* 103 N.J.Super. 406, 417-418, 247 A.2d 370 (Law Div.1968)).

However differently this Court may have decided the matter, it is constrained to enforce the Arbitration Award.  *See W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182 (1983) ("a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the [contract] would be the better one.").  Although the language contained in the Cash Sale Endorsement appears plain and unambiguous on its face, Arbitrator Steen found that such language was "not clear and understandable."  This decision was based on a thorough review of the terms of the Purchase Agreement and the factual circumstances surrounding the execution of the Cash Sale Endorsement.  Courts are not permitted to vacate an arbitration award for "errors in assessing the credibility of witnesses, in the weight accorded their testimony, or in the determination of factual issues."  *NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir. 1975) (citations omitted).  Thus, the Court is constrained to enforce the Arbitration Award, as it draws its essence from a review of the terms of the Purchase Agreement and factual determinations surrounding the execution of the Cash Sale Endorsement.

Petitioners also argue that the Arbitration Award was improperly entered against Toll Brothers, which is Toll NJ's parent company and a non-signatory to the Purchase Agreement. The Arbitration Award simply states that "except for the contract documents, throughout the transaction [Toll Brothers] dealt with [Respondent] as Toll Brothers, Inc. and did not maintain a clear separation of the [Toll NJ] entity." Thus, it appears to this Court that Arbitrator Steen pierced the corporate veil to hold Toll Brothers responsible for the obligations of its subsidiary, Toll NJ.[1]

It is well established that "a corporation is a separate entity from its shareholders" and that "a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State, Dept. of Envtl. Protection v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150 (1983) (citing *Lyon v. Barrett,* 89 N.J. 294, 300, 445 A.2d 1153 (1982)). This principle is "equally applicable when the shareholder is, in fact, another corporation." *Pearson v. Component Tech. Corp.,* 247 F.3d 471, 484 (3d Cir.). However, when a corporate entity is shown to be so dominated by its parent corporation that it has no separate existence and the subsidiary is used to perpetuate "a fraud or injustice, or otherwise to circumvent the law," then the corporate veil may be pierced. *Ventron,* 94 N.J. at 500-501.

Under these circumstances, the Court is, again, constrained to enforce the Arbitration Award. Although the Arbitration Award does not expressly find that Toll Brothers used Toll NJ to perpetuate a fraud, injustice or otherwise circumvent the law and provides little reasoning or analysis, an arbitrator "is not required to list his reasons for the award, nor should an ambiguity in his opinion be seized upon to support an inference that he exceeded his authority." *NF&M*

---

[1] The record contains some support for the finding that there was no separate existence between Toll Brothers and Toll NJ. Much of the written correspondence between Respondent and Petitioners was done so on Toll Brothers' letterhead and / or was signed by Toll Brothers employees on behalf of Toll Brothers. (Newman Cert., Exhibits C, D, E and F; Bokma Cert., Exhibit 16).

*Corp. v. United Steelworkers of America*, 524 F.2d 756, 759 (3d Cir. 1975) (citing *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).  The Court concludes that Arbitrator Steen's decision to pierce the corporate veil and hold Toll Brothers responsible under the Purchase Agreement draws its essence from a review of the terms of the Purchase Agreement and consideration of the relationship between the parties.

Finally, assuming that manifest disregard of the law provides grounds to vacate an arbitration award, vacatur is not warranted on such grounds under these circumstances.  While the Court may not have decided the matter as Arbitrator Steen did, it is also clear that he considered the law in making the determination that the Cash Sale Endorsement was unconscionable and that Toll Brothers could be held responsible for Toll NJ's obligations on a veil piercing theory.  Petitioners point to no evidence showing that Arbitrator Steen willfully flouted the law governing unconscionability of contracts or piercing the corporate veil by refusing to apply it.  Instead, the Arbitration Award seems to be based on evidence that would support Arbitrator Steen's conclusions.

## **IV.**     **Conclusion**

For the reasons set forth above, the Court denies Petitioners' motion to vacate the Arbitration Award.  An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: February 4, 2011